Mr. Friedman, are you able to hear me and see all three panelists? Yes, I can hear you and I can see all three panelists. Good morning. Thank you. Alright, our next case for argument is 22-1793, Magid Glove & Safety Manufacturing v. United States. Mr. Friedman, please proceed. Thank you, Your Honor. May I please the Court? I am here on behalf of Magid Glove, the appellant in the case. The merchandise at issue is knit-to-shady... I'm sorry, I had feedback there due to the YouTube. I've turned that off. Can you still hear me? Yeah. Okay, better. So, the merchandise at issue is knit-to-shaped gloves that have been dipped in polyurethane plastic, covering the palm and a portion of the fingers and thumb, including around to the fingertip. The Court has received exhibits of the gloves for reference. CBP classified the gloves in Section 11 of the Harmonized Pair Schedule, and specifically in Heading 6116, as gloves, mittens, mitts, knitted or crocheted, and then the subheading for impregnated, coated, covered, or with plastic. Appellant contends that the correct classification is as articles of plastic in 39-26-2010. The Trade Court upheld Customs' classification, but erred when it failed to apply Section 11, Note 1H, consistent with this Court's binding decision in CALI 923-591, which determines the test for separating plastic-dipped impregnated materials out of Chapter 59 and into Chapter 39. Specifically, the note excludes fabrics from Section 11, Note 1H, excludes fabrics that have been impregnated, coated, covered, or laminated with plastics that are classifiable in Chapter 39, or articles composed of those fabrics that are classifiable in Chapter 39. Can I ask a question? It's something that puzzled me a little bit. Maybe you can help me out. This Court in CALI said the parties all agreed that the Chapter 59 note was the key to determining what was at issue there, which was whether a Chapter 63 provision applied or not. Now, Chapter 63, but it didn't explain what the statutory basis for that agreement was. When I noodled around about it a little bit, what I came upon was the following, and I guess I'd like you to help me understand it. Chapter 63 itself has a note that says portions of Chapter 3, including 6307, which was the provision at issue there, which was part of Subchapter 1, don't apply to matter that's in 52 through 60-something, but included 59. And therefore, to figure out whether 6307 applied in CALI, you had to look at the note and look at what Chapter 59 said, and hence the Chapter 59 notes. We don't have a Chapter 63 case. We have a Chapter 61 case. So why is there a statutory basis for looking at a note in Chapter 59? That's my puzzle. So, Your Honor, we have the same question we asked with respect to CALI that this Court consider, here in this case, en banc, because of that question. The requirement in the general rule of interpretation, one, to interpret the headings consistent with the relative section notes and chapter notes. The relative, there is no relative, Chapter 59 is not a relative in our view, chapter note, for determining whether merchandise is classifiable in Chapter 61 or Chapter 63, for that matter. However, the law is, as we understand it, we believe is correct, that in order to determine for purposes of Note 1H to Section 11, which incorporates both Chapter 63 and Chapter 61, the Court has looked to the definition of impregnated, coded, covered, etc. Basically, I think, on an in pari materia basis, saying that phrase appears in Chapter 59, it must have the same meaning. But we don't see a statutory link either, Your Honor. So, the Court below, in reaching its conclusion, did not address the decision in CALI, did not address the question of whether the merchandise was excluded as a result of the definition of impregnated, coded, covered, or laminated that is included in Chapter 59, in the Chapter 59 note. Instead, the Court moved to the question of whether the fabric that makes up the glove was itself classifiable in Heading 3921 and applied Chapter 39, Note 10, in order to make that decision. That note only determines whether merchandise is properly classifiable as plates, sheets, strips, and other basic forms, rectangular forms of material, which is not a question that was raised, it's not a question in this case. The knit-to-shape shells were, we admit, never in basic, sort of on the bolt, as they say, in fabric. Okay, let's assume that for purposes of this argument, that I don't agree that CALI really creates the problem that you think it does, because, let's just say, I think Note 2A3 under Chapter 59 is limited to Heading 5903 and doesn't apply to everything in Section 11. So if we just look at Section 11, put CALI to the side for now, just look at Section 11, why doesn't 1H prevent the interpretation that you would like? Because 1H seems to make it clear that the plastic or the coating has to be added after manufacturing, or doesn't cover articles where it's added after manufacturing. Sorry, I misspoke. Okay, so if it does not cover those articles, then that is problematic and potentially fatal for our case. We do not see that in the Note. The Note refers to, the Note excludes from Section 11 the woven, knitted, etc. fabrics that have been impregnated, coated, covered, or laminated, or articles thereof. It does not include a provision stating when that plastic coating must be added. In fact, it only requires that at the time of importation, the normal means of classification is that the merchandise is classified in its condition as imported. When imported, the article must be of a woven, knit, crocheted fabric that has been impregnated, coated, covered, or laminated. If at the time it's imported, the condition of, in our case, the glove is such that the fabric making up the glove has been impregnated, coated, covered, or laminated, then it is excluded from Section 11. So, we don't think that there is a temporal requirement or a requirement that there be a pre-existing fabric, coated fabric, that needs to be cut, sewn into a glove. And I think that there's no evidence that this Note would never apply, or was intended to never apply, to knit-to-shape products of any kind. If that is the correct interpretation, then no amount of plastic applied in any way to a knit-to-shape glove or any other knit-to-shape article would ever be subject to the exclusion from Note 1H. And that's not even the position that Customs appears to have been taking. Counselor, in your reply brief, the grey brief at page 2, you walk back a significant portion of your blue brief. And it leaves me just wondering exactly what your position is, because you appear to move on to rest entirely on Kelly, and whether that is good law or not. Am I looking at this correctly? So, while we're walking back, and what has been confusing throughout, Your Honor, is Section 11 Note 1H does not—and we want to be clear about this— does not mandate Chapter 39 as the place where a woven, knitted glove that is impregnated or coated would go. So, we're not trying to say that as a result of this Note, these gloves are necessarily in Chapter 39. We recognize and want to be clear that what is excluded as a result of this Note, Note 1H, are those fabrics and articles composed of those fabrics. I think it's a better way to put it, to be neutral with respect to the timing issue. So, if as important, the articles are composed of fabric that has been impregnated, coated, etc., in a way that the fabric would be classifiable in Chapter 39, then the fabric is excluded, would be excluded, but also the glove is classifiable in Chapter 39, is excluded. So, that's what we're trying to be clear about. We're not saying that the Note requires Chapter 39 if the glove, for some reason, is not classifiable there otherwise, or the material is not classifiable there otherwise. That has to be the case because we know that 5903 includes impregnated, coated, laminated materials, and I will say somewhat inexplicably, Chapter 61 also includes gloves and other materials that are impregnated, coated, covered, laminated. So, the drafting here creates a section Note that excludes impregnated, coated, covered, laminated fabrics and articles thereof and of Chapter 39, if in Chapter 39, but also explicitly includes at the subheading level, which is important, articles that are affirmatively stated as being impregnated, coated, covered, or laminated. So, customs in its replication of earlier rulings, and this court in Cali resolved that apparent conflict by saying not all impregnated, coated, covered fabrics or articles are excluded. The way to divide that line is to look at the Chapter 59 Note and see that if the article is entirely coated and affixed in a mass of plastic, so that it is surrounded in a mass of plastic, then those are the ones that are excluded as opposed to those that can remain in Chapter 61 or Section 11. The court below erred when it failed to address that distinction between impregnated, coated, covered fabrics and products thereof that can stay in Chapter 61 and those that must be moved elsewhere, potentially in Chapter 39, if not excluded by Chapter 39 Note 2p. So, the two notes point back to one another. Do you want to save your remaining time for rebuttal?  Okay. Good morning. May I please the court? The key issue here is the statutory analysis, and the court had a question in terms of how do we get to the classification via a statutory analysis. And here, if we follow the guiding principle of GRI 1, just looking at the competing headings, that's how we get to the classification of the gloves at issue. GRI 1 says that the headings are paramount, and if you look at Heading 61-16, it covers gloves, mittens, and mitts, knitted or crocheted. It's very broad. It's not limited to any kind of material. The explanatory notes to that heading state that the heading covers all gloves. And so, if we do a head-to-head comparison and you look at 39-26, where a plaintiff wants to classify the gloves, it only covers a partial part of the glove of plastics. So, if we're doing a head-to-head analysis under GRI 1, 61-16 is the proper classification heading for that merchandise. And with respect to Note 1H, the court correctly recognized that there is actually a temporal element built into the statute. The statute uses the term thereof, which sort of indicates that you look back and say thereof meaning made of, came from, that's how we interpret it. So, that heading, Note 1H, covers the two categories, fabrics and articles of those fabrics. So, that's how… So, Mr. Friedman says that the better reading of articles thereof is not made of, but composed of, in particular composed of at the time of importation, which is the time at which these tariffs have effect. So, I think that's sort of a mixture of two different concepts. One is the legal interpretation of the note, and one is actually when the merchandise comes in, how do we apply that note to the merchandise? So, if we're just looking at the merchandise, I mean the statutory note, the note has a temporal element. It says thereof, made of, caused to have, they link together. In terms of when the merchandise hits the border and Customs has to classify, there are many times that Customs will ask the importer for more information. It's not always a visual, it's not always paper. Sometimes the Customs attorneys, I mean Customs will say at the border, we need more information. They say it a lot of times, especially with chemicals. I've seen it testing with clothes. So, it's not, I wouldn't use the fact that Customs has to do extra work at the border to interpret the note. Like, the note is the note. It has a temporal element built into it, and how it's administered at the border is another issue. I'm not, I guess, quite sure that gets to Mr. Friedman's main point, which is composed of, he thinks is a better reading than made of, so that the fabric pre-glove construction, pre-article construction, needn't have this coating, to simplify, as long as the article, once constructed, does have this coating. Understood. Independent of whether it's in lotion or on the floor. Understood. So, my, our response to that is, when we're interpreting statutes, we want to make sure that everything is interpreted consistently and in harmony. And if that's the case, if the glove, just putting plastic on the glove, no matter when it's applied, comes in, then it would actually read out portions of 6116. 6116 clearly provides for gloves, mittens, and mitts, knitted or crocheted, impregnated, coated, or covered with plastics or rubber. So that means every time a glove showed up, it wouldn't go, you know, we would have to look at 1H, and 1H would kick it out, and maybe put it in 39. No product would ever fit into 6116. So we somehow have to interpret that note so that it all works together. So you use the subheading to drive the proper interpretation of this thereof trace? I don't want to say we're using the subheading to interpret, but just to make sure that all the statutes work together, and where you're not interpreting one statute to read out the other. They all have to coexist to work together. How do you see the Cowley case fitting here in your argument? I don't see the Cowley case applying at all. The Cowley case had a lot of moving pieces, but the driving force of those moving pieces were the actual provisions, GR1, the actual provisions at issue. And that's what drove the analysis in terms of the notes, looking at the notes, and then looking at note 2 to 59, and then looking at impregnated, coated, or covered, or embedded in plastic. So here, none of that exists here. Our notes, GR1, that drive the analysis are 6116, which we just discussed, and note 1H, and 3926. We don't get to 6307. We don't get to 5903, Chapter 59. We don't think Cowley applies at all. Maybe I just missed it, but I did not see any discussion in Cowley, either in this court or in the trade court's opinion, of this note to Chapter 63 that at least made me think, oh, now I understand why they were looking at Chapter 59. Have I just misunderstood the relevance? It seems to me to provide the explanation, so it troubles me that nobody said that before. No, I think you're right. The trial court did not mention that note, and I think you do have to go back through, I think, the CIT decision to sort out where these notes arrived and how the court sort of came to the issue that the only issue here was whether the merchandise is embedded or completely embedded in plastic. So there was some sort of trail that you have to go back and follow. Here, the trial court didn't follow that trail. It's not in the opinion, so I don't think the court even thought Cowley applied. It dropped a footnote in its decision mentioning the note too, but that's the extent of it. So. And if there are no further questions, thank you. The trial court decision should be affirmed. Thank you, Ms. Hall. Mr. Freedman, please proceed. Thank you, Your Honor. First of all, with respect to whether Cowley applied, the court in Cowley said explicitly where an article is composed of both textile and plastic, we must look to Chapter 59 to determine whether the article should be classified as a textile under Section 11. It's clearly there as a we must. The court below should have done the same. This court has previously stated that when an opinion of the Supreme Court issues the opinion, it's not just the results but also the portion of the opinion necessary to the results by which this court is bound. That same rule applies to the Court of International Trade. The Court of International Trade should have reviewed Cowley, should have applied that rule, that case, and made a determination as to whether the glove shell is completely and entirely fixed in a surrounding mass of plastic. That is the legal test. The difference between Chapter 63 and Chapter 61 is not relevant when the issue is the application of a section note. The Section 11 note applies equally to both. Therefore, that is not a sufficient distinction. That's all I have, Your Honors. Unless you have questions, I am happy to speak. Okay. Thank you both, Counsel. This case is taken under submission.